(No. 85-CV-0139-)

*In re* APPLICATION OF DAVID G. MERTA

*Opinion filed January 14, 1985.*

*Opinion filed October 28, 1987.*

*Order filed August 25, 1988.*

DAVID G. MERTA, *pro se*, for Claimant.

NEIL F. HARTIGAN, Attorney General (HANS G. FLADUNG and SALLIE A. MANLEY, Assistant Attorneys General, of counsel), for Respondent.

## OPINION

POCH, J.

This claim arises out of an incident that occurred on March 3, 1983. David G. Merta, Claimant, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act (Ill. Rev. Stat. 1979, ch. 70, par. 71 *et seq.*).

This Court has carefully considered the application for benefits submitted on August 6, 1984, on the form prescribed by the Attorney General, and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That the Claimant, David G. Merta, age 26, was a victim of a violent crime as defined in section 2(c) of the Act, to wit: aggravated battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—4).

2. That on March 3, 1984, the Claimant was stabbed several times following an altercation with the offender. The incident occurred at 4810 South Pulaski, Chicago, Illinois. The Claimant was initially taken to Holy Cross Hospital for treatment of his injuries. The offender was apprehended and is presently being prosecuted for aggravated battery.

3. That the Claimant seeks compensation for medical/hospital expenses only.

4. That section 2(h) of the Act states that loss of earnings shall be determined on the basis of the victim's average net monthly earnings for the six months immediately preceding the date of the injury or on $750 per month, whichever is less.

5. That the Claimant was not employed for the six months immediately preceding the date of the incident out of which this claim arose and therefore suffered no loss of earnings compensable under the Act.

6. That the Claimant incurred medical/hospital expenses in the amount of $7,846, none of which was paid by insurance, leaving a balance of $7,846.

7. That pursuant to section 10.1(e) of the Act, this Court must deduct $200 from all claims (except in the case of an applicant 65 years of age or older) and the amount of benefits, payments or awards payable under the Workers' Compensation Act, Dramshop Act, Federal Medicare, State public aid, Federal Social Security Administration burial benefits, Veterans Administration burial benefits, health insurance, or from any other source, except annuities, pension plans, Federal Social Security payments payable to dependents of the victim and the net proceeds of the first $25,000 of life insurance that would inure to the benefit of the applicant.

8. That pursuant to section 10.1(g) of the Act, compensation under this Act is a secondary source of compensation and the applicant must show that he has exhausted the benefits reasonably available under the Criminal Victims' Escrow Account Act or any governmental or medical or health insurance programs, including but not limited to Workers' Compensation, the Federal Medicare program, the State public aid program, Social Security Administration burial benefits, Veteran's Administration burial benefits, and life, health, accident or liability insurance.

9. That the Claimant filed an application for medical assistance with the Illinois Department of Public Aid on March 14, 1984. This application was denied on April 9, 1984, due to the Claimant's failure to comply with the Department of Public Aid's policy regarding cooperation in asset verification. Therefore, his eligibility for assistance could not be determined and his application was denied.

10. That by reason of the Claimant's failure to exhaust the remedies reasonably available to him

through public aid, the Claimant has not met a required condition precedent for compensation under the Act.

It is hereby ordered that this claim be, and is, hereby denied.

## OPINION

POCH, J.

This claim for compensation under the Crime Victims Compensation Act (Ill. Rev. Stat., ch. 70, par. 71 *et seq.*), hereinafter referred to as the Act, arises out of an incident which took place in Chicago, Illinois, on March 3, 1984. On that date Claimant was stabbed several times during an altercation at 4810 South Pulaski. The offender was apprehended and prosecuted for aggravated battery. Claimant was initially taken to Holy Cross Hospital for treatment of his injuries and thereafter was transferred to Cook County Hospital.

On January 14, 1985, this Court entered an opinion which denied compensation due to Claimant's failure to exhaust remedies reasonably available to him through the Illinois Department of Public Aid (IDPA). Claimant then petitioned the Court for a hearing pursuant to section 13.1(a)(3) of the Act. A hearing was held on May 13, 1986, and Commissioner J. Barry Fisher has duly filed his report.

In this claim the Court is concerned with whether Claimant has shown he exhausted the benefits reasonably available to him under the State's public aid program.

Section 10.1(g) of the Act provides as follows:

"(g) compensation under this Act is a secondary source of compensation and the applicant must show that he has exhausted the benefits reasonably available under the Criminal Victims' Escrow Account Act or any governmental or medical or health insurance programs, including, but not

333

limited to Workers' Compensation, the Federal Medicare program, the State Public Aid program, Social Security Administration burial benefits, Veterans Administration burial benefits, and life, health, accident or liability insurance."

Claimant was unemployed at the time he was injured. While in the Cook County Hospital he was approached by a representative of IDPA who interviewed him concerning whether he wanted assistance in paying his hospital bills. Claimant indicated he wanted help and signed an IDPA application for medical assistance. However, it appears from the record that Claimant was not cooperative with IDPA when a subsequent interview was scheduled to discuss his assets and he was therefore denied medical assistance for failure to cooperate in asset verification as required by IDPA policy. The following dialogue took place at the hearing between the assistant Attorney General and Claimant:

"Ms. Manley: All right. When you received the letter from the Department of Public Assistance denying you assistance in paying your hospital bills, the reason given on that letter for the denial was that you had not cooperated in verifying your assets?

Mr. Merta: Right. I understand that.

Ms. Manley: And you understood that if in fact you were going to pursue the public assistance that might be available to you, you would have to cooperate in verifying assets. Isn't that right?

Mr. Merta: Yes.

Ms. Manley: And you decided not to do that. Isn't that correct?

Mr. Merta: She asked me if I had a bank account which is not right I don't think."

According to section 10.1(g) of the Act (quoted hereinabove), benefits under the Act are a secondary source of compensation. An applicant must show that he exhausted benefits reasonably available under programs such as those administered by IDPA. We do not think that in enacting that provision of the Act the legislature intended for every potential applicant for crime victims

compensation to concurrently seek medical assistance from IDPA. Clearly some applicants would not be eligible for IDPA assistance in any event. However, we cannot ignore the plain language of the Act which places the burden on the applicant to show that he exhausted the reasonably available benefits.

The Office of the Attorney General is charged with the responsibility of investigating all claims made pursuant to the Act, reporting its findings to the Court, and representing the interests of the State of Illinois in hearings before the Court. The only time exhaustion of remedies becomes an issue in a crime victims compensation claim is when the Office of the Attorney General raises it. Our experience and research indicate that the Office has not been irresponsible in raising the issue. In each instance the issue has been raised, the record showed the applicant had another potentially available remedy but did not collect. Because of this and the plain language of the Act, under circumstances such as the case at bar, we hold that once the Office of the Attorney General raises the issue, the Claimant must show that he exhausted the suggested benefits or that the suggested benefits were not reasonably available to him. What is reasonably available necessarily must be judged on a case-by-case basis.

We have encountered the issue in several previously decided cases. In *In re Application of Nagy* (1975), 30 Ill. Ct. Cl. 888, the failure of a doctor to accept a public aid "green card" for follow-up care was an acceptable showing that such benefits were not reasonably available to the applicant. In *In re Application of Dickey* (1981), 35 Ill. Ct. Cl. 517, the applicant was eligible to have his medical bills paid by township assistance. Some were paid and some were not due to the applicant's

failure to submit the bills within the required time period. Those benefits were reasonably available and should have been exhausted. In *In re Application of Hamilton* (1983), 35 Ill. Ct. Cl. 1023, the applicant was entitled to IDPA medical assistance at the time of the crime. She neglected to inform her hospital of this fact and it subsequently applied to IDPA on her behalf. That applicant was denied due to her failure to keep an appointment which was necessary to a determination of eligibility. The record does not indicate why she failed to keep the appointment or otherwise indicate that she offered any evidence that IDPA medical assistance would not have been available. In *In re Application of Wells* (1984), No. 84-CV-0371, the applicant had applied for IDPA assistance but was denied on the grounds that he failed to cooperate with IDPA in the verification of his eligibility. He appealed IDPA's decision alleging that he did not receive the correspondence relating to the request for the verification, but the denial was affirmed. The preponderance of the evidence in the record of his application for crime victims compensation was such that his actions in pursuing the IDPA benefits were not reasonably sufficient to meet the requirement of the Act. In *In re Application of Gordon* (1986), No. 85-CV-1131, the applicant was turned down due to his failure to comply with IDPA's policy regarding cooperation in disclosure of income and assets. There, as in the case at bar, his eligibility for assistance could not be determined and his application was denied. His application for crime victims compensation was denied for failure to show he exhausted a reasonably available benefit. He did not request a hearing following the decision.

Recently, we were confronted with the issue in *In re Application of Hickey* (1987), No. 82-CV-0450. In *Hickey* the claimant was unemployed and without

medical insurance at the time of the crime. Based on the investigatory report, his application for crime victims compensation was denied on the grounds that he failed to exhaust his remedy, which was IDPA medical assistance. He requested a hearing and a hearing was held. The evidence adduced at the hearing indicated that he was a victim of a crime so severe that he required reconstructive surgery as well as three weeks' hospitalization. He made an appointment with IDPA within a few weeks after his release from the hospital. Still suffering ill effects from the crime, he telephoned to cancel the initial appointment. He stated that he asked if that would be all right and was told "there was no problem." Two weeks later, he called again for an appointment and was told by a supervisor at IDPA that because he missed his original appointment he was denied assistance. The State contended that by cancelling his first appointment and/or by not appealing the denial decision, he did not exhaust his remedies within the meaning of the Act. We disagreed and granted the applicant an award.

In the case at bar, the issue was raised. The applicant had filed for IDPA benefits but was turned down for failure to comply with IDPA's regulations regarding cooperation in disclosure of assets. At the hearing he offered nothing to show such assistance would not have been available to him through reasonable cooperation. However, having reviewed the transcript of the hearing we find that he was not provided adequate opportunity to do so and, in the interest of fairness, we remand the case to the Commissioner with instructions to hold another hearing to allow the applicant to present evidence on this issue.

## ORDER

POCH, J.

This claim arises out of an incident that occurred on March 3, 1984. David G. Merta, Claimant, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act (Ill. Rev. Stat. 1985, ch. 70, par. 71 *et seq.*).

1. The Court on January 14, 1985, denied compensation due to Claimant's failure to exhaust remedies reasonably available to him through the Illinois Department of Public Aid (IDPA). Claimant petitioned the Court for a hearing pursuant to section 13.1(a)(3) of the Act.

2. On January 7, 1988, a hearing was held before Commissioner J. Barry Fisher and he determined that the Claimant had assets in excess of the $400 maximum assets allowed for medical assistance from IDPA. Therefore, the Claimant would not have been eligible for public aid.

3. The Claimant complied with all pertinent provisions of the Crime Victims Compensation Act.

4. The Claimant sought compensation for medical/hospital expenses only.

5. The Claimant was not employed for six months immediately preceding the date of the incident out of which this claim arose and therefore suffered no loss of earnings compensable under section 2(h) of the Act.

6. The Claimant incurred medical/hospital expenses in the amount of $7,846, none of which was paid by insurance, leaving a balance of $7,846. To date, the Claimant has paid nothing towards this balance.

7. That after applying the applicable deductions, the Claimant's loss for which he seeks compensation is $7,646, based upon the following:

| | Compensable Amount | Less Amount of Applicable Deduction | Total |
|---|---|---|---|
| Cook County Hospital | $7,020.00 | $179.00 | $6,841.00 |
| Holy Cross Hospital | 617.00 | 15.80 | 601.20 |
| Ambulance Service Corp. | 197.00 | 5.00 | 192.00 |
| Southwest Radiological Association | 12.00 | .20 | 11.80 |
| Totals | $7,846.00 | $200.00 | $7,646.00 |

It is hereby ordered that the sum of $6,841 be and is hereby awarded to David Merta and Cook County Hospital.

It is further ordered that the sum of $601.20 be and is hereby awarded to David Merta and Holy Cross Hospital.

It is further ordered that the sum of $192 be and is hereby awarded to David G. Merta and Ambulance Service Corporation.

It is further ordered that the sum of $11.80 be and is hereby awarded to David G. Merta and Southwest Radiological Assoc., S.C.